## JOHNSON, Respondent, v. LUMBER INSURANCE COMPANY OF NEW YORK, Appellant.

St. Louis Court of Appeals, April 6, 1909.

1. **INSURANCE: Proofs of Loss: Delivery of Proofs.** Where an insurance policy specified no particular place where, or person to whom, the proofs of loss should be delivered, a delivery of the same to the general agent in the State where the property was situated was sufficient delivery.

2. ——: ——: **Objections to Proof: Waiver.** Where the agent of an insurance company with proper authority made out and approved the proofs of a loss and told the insured that the adjustment was ended and the loss would be paid at once, the insurance company could not afterwards be heard to complain that the proofs of loss were insufficient.

3. ——: ——: **Inventory: Waiver.** An insurance company, after proofs of loss were presented and approved by its general agent, and after the expiration of sixty days from the presentation of the proofs of loss, the time at which the loss was payable, could not demand an inventory of the stock and a compliance with other conditions provided by the policy for the purpose of verifying the proofs of loss.

4. ——: **Examination: Forfeiture.** Where an insurance policy provided for forfeiture by the insured if he refused to submit to an examination under oath and refused to produce his books and papers for inspection, such a refusal did not work a forfeiture or prevent his recovery for a loss, where a demand for the same was not made until after the adjustment of the loss and after the same became payable.

Appeal from Montgomery Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

AFFIRMED.

*John Jay McKelvey* and *Eugene S. Wilson* for appellant; *Alpheus H. Favour* of counsel.

(1) The court erred in not directing a verdict for the appellant in as much as plaintiff's assignor had failed to comply with the requirements of lines 81, 82, 83, 84 and 85 of the policy. Mueller v. Insurance Co., 45 Mo. App. 85; Fleisch v. Insurance Co., 58 Mo. App. 596; Gross v. Insurance Co., 22 Fed. 74; Claflin v. Insurance Co., 110 U. S. 81; Sims v. Assurance Society, 129 Fed. 804; Insurance Co. v. Sims, 115 Ga. 939, 42 S. E. 269; Insurance Co. v. Forehand, 169 Ill. 626, 48 N. E. 830; Murphy v. Insurance Co., 61 Mo. App. 323; Farmers Ins. Co. v. Mispelhorn, 50 Md. 180; Tucker v. Fire Ins. Co. (W. Va.), 51 S. E. Rep. 86.    (2) The court erred in submitting the question of whether the company waived its right to examine the insured when there was no testimony to support the necessary elements of estoppel *in pais.*    (a) An adjustment does not end the company's right to demand further proofs of loss or an examination of the insured. Colonius v. Insurance Co., 3 Mo. App.

56; Giboney v. Insurance Co., 48 Mo. App. 185; Realty Co. v. Assurance Co., 86 Mo. App. 596; Murphy v. Insurance Co., 7 Allen 289, 89 Mass. 239; Vining v. Insurance Co., 89 Mo. App. 311; Rudd v. Insurance Co., 120 Mo. App. 1; Bar Assn. v. Blin., 63 Tex. 282; Willoughby v. Insurance Co., 71 N. W. 272. (b) The appellant was entitled to demand further information relating to the loss and an examination unless by its own acts it was estopped. Electric Co. v. Insurance Co., 159 N. Y. 418; Leigh v. Insurance Co., 37 Mo. App. 542; Bolan v. Fire Assn., 58 Mo. App. 225; Burdick v. Assurance Co., 77 Mo. App. 629; Watt v. Insurance Co., 87 Mo. App. 83.

*S. S. Nowlin, Walter H. Saunders* and *Barclay & Fauntleroy* for respondent.

(1) Under his written authority Campbell was the general agent of the company, with the widest powers. Campbell certainly was defendant's general agent; he had power to bind the company. He adjusted the losses in his territory and he has been in the habit of referring the losses to other adjusters. Ball v. Insurance Co., 129 Mo. App. 34, 107 S. W. 1099; Springfield Co. v. Insurance Co., 151 Mo. 90; Nickel v. Insurance Co., 144 Mo. 420; McCullough v. Insurance Co., 113 Mo. 607; Harness v. Insurance Co., 76 Mo. App. 411; McCullom v. Insurance Co., 67 Mo. App. 80. (2) Where parties get together and adjust the loss at a certain figure, in the absence of fraud or deceit, there is just one thing the insurance company can do, namely, pay the amount agreed upon. Levy v. Insurance Co., 10 W. Va. 560; Insurance Co. v. Myer, 93 Ill. 275; Insurance Co. v. Archdeacon, 82 Ill. 236; Smith v. Insurance Co., 62 N. Y. 85; Insurance Co. v. Chestnut, 50 Ill. 111; Insurance Co. v. Roodhouse, 25 Ill. App. 61; Bernhard v. Ins. Co., 65 Atl. 134. (3) If, as a matter of fact, the Fullerton-Powell Company had on hand much more than $24,500 worth of lumber and were liable as co-insurers under the eighty per cent clause, the adjustment waived defendant's rights to hold

said Fullerton-Powell Company. For if there was no concealment as to the quantity of lumber, and the insurance was not eighty per cent of the cash value, defendant waived its right, by the adjustment, to insist on the eighty per cent clause. Glasscock v. Insurance Co., 125 Iowa 170, 100 N. W. 503; Insurance Co. v. Allen, 128 Ala. 451, 30 So. 537; Fulton v. Insurance Co., 51 Mo. App. 460; Tillis v. Insurance Co. (Fla.), 35 So. 171; Sisk v. Insurance Co., 95 Mo. App. 695. (4) Campbell was the adjuster of the company and could bind it. He had adjusted its previous fire, and he testified he was in the habit of adjusting defendant's losses. Rissler v. Insurance Co., 150 Mo. 373; Roberts v. Insurance Co., 94 Mo. App. 150; Union Co. v. Mallory Co., 48 Am. St. Rep. 346, 157 Ill. 341. A waiver once had cannot be recalled, and the clauses of policy waived, are gone forever. Terti v. Insurance Co., 76 Mo. App. 42; Porter v. Insurance Co., 62 Mo. App. 520; Brownfield v. Insurance Co., 84 Mo. App. 134; Scadfare v. Insurance Co., 88 N. W. 779.

STATEMENT.—Plaintiff's action is on an insurance policy and he sues as assignee of the Fullerton-Powell Hardwood Lumber Company, the insured. The policy covered a stock of hardwood lumber at Mount Vernon, Illinois, and ran a year from March 8, 1907. It was issued from the office of W. T. Campbell, who was defendant's general agent in St. Louis for the State of Missouri, with "full power to receive proposals for fire insurance, to fix rates of premium, to countersign, issue and renew policies of insurance, signed by the president and secretary of the above-named company (Lumber Insurance Company of New York) subject to the rules and regulations of said company and such instructions as may from time to time be given by the officers and general agency of said company." He had power likewise to issue policies on property located in eight other States, including Illinois, by obtaining prior authority from the New York agents of defendant, who were styled Lumber

Insurers General Agency; and the course of business between Campbell and defendant permitted him to adjust losses in the territory. He had adjusted the loss caused by a small fire in the Mount Vernon yards of the Fullerton-Powell Company three weeks before the large fire which led to this action, and his adjustment was accepted by the company and the money paid. The policy in suit was originally for ten thousand dollars, but the payment of the first loss reduced it to $9,907.50. Three other companies carried insurance on the stock, including the Adirondack Fire Insurance Company. The loss in controversy was by a fire which occurred April 28, 1907, and was supposed to be of incendiary origin; probably set by tramp intruders in a freight car near the yards. Campbell was notified of the fire by the insured and as there had been several incendiary fires in Mount Vernon, he promptly took steps to have the loss ascertained with a view to paying it and cancelling all policies held in the town by companies he represented. An experienced adjuster by the name of Lowe was directed by him to repair to Mount Vernon and adjust the loss. Lowe went there, met the Fullerton-Powell people, made a full investigation, was furnished all the information he desired, agreed with them regarding the amount of the damage and prepared a proof of loss which Powell, the vice-president of the company accepted and signed. As this proof was comprehensive and in the usual form of such documents, it need not be copied. It stated the entire cash value of the hardwood lumber in the yard at the time of the fire was $24,500, whole loss $3,593.73, total insurance $19,815, amount of defendant's insurance $9,907.50, and amount due the insured under its policy $1,797.87. The balance of the loss was apportioned among the Adirondack, Eastern and National Lumber Insurance Companies. Two of them paid in accordance with Lowe's adjustment, but defendant and the Adirondack company did not. The proof of loss was signed May 2d by Powell, who accompanied Lowe to

St. Louis, at Campbell's office and was sent by the latter to the general agency in New York May 4th. Campbell had introduced Lowe to Powell as the man who would adjust the loss for the insurance companies, saying the adjustment would no doubt be satisfactory, the loss settled and that would be the end of the trouble. After signing the proof Powell asked Campbell if there was anything further to be done, remarking his yard had been closed down since the fire, he had laid off from his duties, his employees were idle and drawing salaries, he had cars of lumber coming in and wanted the matter absolutely settled and the adjustment ended so he could resume business. Campbell told him nothing more was required, that the adjustment was complete and he would get his money, asking whether he wanted to be paid in sixty days or discount the claim one per cent for cash. Powell, according to his expression, desired to get cleaned up and go ahead with his business, and hence agreed to the discount. In transmitting the proof of loss to the New York agency of the company, Campbell wrote he had had the loss adjusted by Lowe and the reason why; and that he would immediately cancel defendant's policy on the yard. On May 14th, or ten days later, he received a telegram from the New York office asking him to wire the Fullerton-Powell people to instruct their Mount Vernon office to furnish defendant's special agent Lightner, certain requested information, as he had been sent there to verify the adjustment. In point of fact this man Lightner had been instructed to take an inventory of the stock of the Fullerton-Powell Company, and on arriving at Mount Vernon had demanded of the foreman of the yard permission to take an inventory and see the books. The foreman told him the books were not kept there, but at the main headquarters of the company in South Bend, Indiana, and as to an inventory it would have to be authorized by the officers of the company. This incident led to the telegram to Campbell wherin

137 App.—25

the latter was asked to induce the Fullerton-Powell company to permit Lightner to take an inventory. Campbell communicated with Powell and persuaded the latter to come to St. Louis and meet Lightner. In a letter of date May 17th, defendant's secretary informed Campbell they wanted Lightner to inventory the stock because the adjustment stated the sound values in round numbers instead of listing the kinds of lumber and defendant wished Lightner to correct this and to look over the stock to enable defendant to determine whether it would reinsure the property. When Powell, Lightner and Campbell met in St. Louis, Powell furnished all the information he could, stating he could only estimate the value of the yard stock at the time of the fire, but could do so within a few hundred dollars. This was two weeks after the fire and Powell declined Lightner's request to inventory the stock. Nothing more was done until May 27th, when defendant's secretary wrote Campbell complaining the proof of loss had been prepared carelessly, Lightner refused access to the yard, every impediment thrown in the way of defendant's obtaining information, and that the value of the stock was vastly in excess of what the insured stated in the proof. The latter asked Campbell to procure from the Fullerton-Powell Company an exact statement of the quantity of lumber in the yard at the time of the fire and the different kinds and grades—in other words, a detailed schedule; also the amount the stock had been increased or decreased in the two weeks succeeding the fire. On the same day Campbell wrote defendant's General Agency in New York the other companies which carried policies on the risk had paid the insured, and asked why defendant had not sent a draft for its part as Powell had agreed to make a discount for cash. The New York office answered the proof of loss was inaccurate and defendant was awaiting the further information asked for in its letter of the 27th. Campbell then wrote under date of June 6th, saying his letter of the 15th had covered the ground called

for in defendant's letter of May 27th; that it was only
fair to look at the matter from the standpoint of the in-
sured and the request he was asked to prefer would be
embarrassing; explaining that Lightner went to Mount
Vernon without notice being given in advance and as the
adjustment had been made, the Fullerton-Powell people
were nonplussed; and, moreover, no one but the foreman
of the yard was there at the time; further saying Powell
had afterwards met Lightner by Campbell's arrangement
in St. Louis and given what information he could re-
garding the value of the yard stock at the time of the
fire; and that when Campbell made the adjustment of
the first loss, he had approximated the value of the stock.
On June 11th, the secretary wrote Campbell defendant
could see no reason why the policy-holder should be em-
barrassed by a request for a sworn statement of the
sound value of the stock, and defendant would consider
the matter of further insurance after the loss was set-
tled.   Campbell testified he could not remember the sub-
stance of the conversation he had with Powell in relation
to the information defendant requested—could not re-
member just what happened.   On June 20th the New
York Agency telegraphed Campbell that unless the Ful-
lerton-Powell people would withdraw the proof of loss,
defendant would proceed in accordance with lines 82, 83,
and 84 of the policy, *i. e.*, would require the insured to
submit to an examination under oath and produce books
and papers to be inspected by the company; that defend-
ant would allow until Saturday night for a withdrawal
of the proof.   Campbell communicated the substance of
this telegram to a man named Kremer in Chicago, whose
only connection with the loss, so far as was shown, was
this: he was an experienced lumber man and had settled
losses with insurance companies, and so Powell asked
him to be present when the adjustment was made.   On
June 22d, Campbell wired the New York office the in-
sured refused to withdraw the proof of loss.   On June
28th, the New York Agency wrote the insured to its ad-

dress in South Bend, Indiana, that defendant demanded an examination of the officers, agents and employees of the company under the terms of lines 82, 83, 84 and 85 of the policy; also as examination of all books of account, bills, invoices and other vouchers, and permission to make extracts and copies thereof, designating the place of examination as South Bend, Indiana, the date as July 5, 1907 and Alpheus H. Favour as the person who would conduct the affair. On July 5th Favour arrived at South Bend and served a written demand on Powell of the tenor of the letter just mentioned. Powell refused to grant the examination and its refusal at this time and previously, as defendant asserts, is relied on in defense of the present action; defendant insisting it was wronged because a thorough examination would have shown the stock in the yards was so large when the fire occurred that plaintiff was bound, under a term of the policy to bear part of the loss itself. The clause of the policy, supposed to have been violated reads:

"81. The insured, as often as required, shall exhibit to any person designated by this company, all that remains of any property.

"82 herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and

"83 as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies

"84. thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall

"85 permit extracts and copies thereof to be made."

We have recited the substance of all the material facts. The case was submitted to the jury under instructions which need not be recited, a verdict was returned for plaintiff, and defendant took this appeal.

GOODE, J. (after stating the facts).—The policy specified no particular place where, or person to whom the proof of loss should be delivered, but merely said proof should be rendered to the company in sixty days after the fire. Hence when the proof of loss was executed by Powell and left with Campbell on May 2d, it was received by the company in the meaning of the policy. [McCullough v. Insurance Co., 113 Mo. 606, 614.] The right of the insured to be paid the stipulated indemnity did not accrue until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss thereunder (*i. e.* the policy) had been received by the company. If an insurance company is dissatisfied with the proof of a loss furnished by the insured, he must be notified of the company's objection and afforded an opportunity to make corrections, if enough is left of the period in which proof is to be furnished for notice to be given. [Probst v. Insurance Co., 64 Mo. App. 408; De-Land v. Id., 68 Mo. App. 277.] The company will not be heard to say the proof was unsatisfactory if it omits to inform the insured of defects so he may cure them; and especially is it precluded when its empowered agent adjusts the loss, makes out and approves the proof and assures the insured in the most positive terms the adjustment is ended and his loss will be paid at once, as happened in the instance at bar. [McCullough v. Insurance Co., 113 Mo. loc. cit. 615.] Defendant never advised the Fullerton-Powell Company the proof prepared by Lowe and approved by Campbell, was unsatisfactory. Instead of doing this defendant pursued a course outside its rights under the contract. It first demanded the privilege of inventorying the stock in the yard, an act not authorized in the policy; next asked Campbell to get an exact statement from the insured of the quantity, grades and kinds of lumber on hand when the fire happened; a request which, if Campbell preferred it, was not a demand for an examination according to the policy (Dougherty v. Ins. Co., 67 Mo. App. 526) and, moreover,

there was no evidence Campbell preferred it; for he was relied on to prove the fact and could not remember. Finally the company, without specifying objections to the proof of loss, demanded the insured withdraw it on pain of being called on to undergo an examination and produce books and papers. The demand for withdrawal was arbitrary, and defendant must be taken, under all the circumstances in proof, to have been given a satisfactory proof of loss on May 2d, so as to make the indemnity accrue sixty days later on July 2d. The facts we have recapitulated derive additional force from the further fact that Powell went to St. Louis at Campbell's request to confer with defendant's agent Lightner, and there furnished the latter all the information at hand, and, as far as appears, all Lightner wanted, regarding the value of the stock on hand when the fire occurred and the increase and diminution of it later; for Lightner, no more than Lowe, asked for an examination under oath. What defendant had been insisting on was an inventory of the stock, partly in order to verify the statement in the proof prepared by Lowe of the quantity of lumber on hand at the date of the fire, and partly as a means of determining whether or not it would write another risk on the stock, and so far the insured had rejected no demand by the company which was within the contract. On May 27th, about a month after the fire, defendant wrote Campbell to make a second and different demand, already mentioned and disposed of: to-wit, for an exact statement of the quantity of lumber in the yard when the fire occurred, its kinds, grades and quantity and the extent of its diminution and increase in the two weeks following the fire. On June 11th, the first mention of a sworn statement occurred in a letter from the secretary to Campbell, but no time or date was fixed for this, or demand made within the terms of the policy. [Dougherty v. Insurance Co., supra.] Defendant then took a third position and notified Campbell defendant would demand a personal examination under oath and production of

the books and papers in accordance with one of the provisions of the policy, unless the insured would withdraw the proof of loss, and until the following Saturday would be allowed for withdrawal. The insured having refused to withdraw the proof of loss, on May 28th, two months after the fire, defendant notified him for the first time the company asked for an examination under oath and the production of books and papers. This notice was given by a letter written from New York, but the actual demand was not made until July 5th, or more than sixty days after the proof of loss had been turned over to defendant and when its liability had accrued. We think it is unnecessary to determine whether the aforesaid stipulation of the policy should be held, when construed in connection with other clauses, to call for an examination prior to the adjustment of the loss, or whether Campbell's unequivocal promise to pay at once and take a discount, bound the company. All the authorities cited in support of the proposition that refusal of the insured to submit to an examination, works a forfeiture of his rights under the policy are distinguishable from the present case in one or more important particulars; either the refusal held to defeat recovery was for an examination demanded first before the proof of loss was made and any subsequent delay occurred from the misconduct of the insured, as in Fleisch v. Insurance Co., 58 Mo. App. 596; or the proof was prepared by the insured and sent to the company and was not in the nature of an adjustment of the loss by an accredited agent of the company. In the present instance the proof was prepared for Powell's signature by an adjuster appointed by defendant after an investigation of all the facts to his own satisfaction, was approved by Campbell, an agent of quite general powers including power to adjust losses, and was then executed by Powell. We do not say these circumstances would necessarily preclude a company from demanding an examination if the company believed mistake or fraud had occurred in the adjustment,

but neither is pleaded.    But a demand to examine under oath must be reasonable as to place and time.    [4 Cooley, Ins. Briefs, 3395; Fleisch v. Insurance Co., supra; Murphy v. Insurance Co., 61 Mo. App. 323; Am. Cent. Insurance Co. v. Simpson, 43 Ill. App. 98.]    Defendant's demand was entirely unreasonable, in view of the facts that Lowe might have availed himself of an examination while adjusting the loss and Lightner might have demanded one when Powell, at his own expense, met him in St. Louis; that formal demand was not made until, under the terms of the policy, it was the duty of defendant to pay the loss, if there had happened no exonerating breach of the contract by the insured, and none is alleged.    To allow the company to stave off payment by taking time for investigation after liability had accrued, would abrogate the policy-holder's right to be paid sixty days after satisfactory proof of loss was received by the company.    [Aetna Ins. Co. v. Schacklett (Tex.), 57 S. W. 583.]    As this contract appears to be an Illinois one, we have not applied our statute, which requires examinations to be conducted where the loss occurred (R. S. 1899, sec. 7976).

The judgment is affirmed.    All concur.