Frank H. NIEHAUS and Margaret M. Niehaus (Plaintiffs), Respondents,

v.

The CENTRAL MANUFACTURERS' MUTUAL INSURANCE COMPANY, a Corporation (Defendant), Appellant.

No. 45036.

Supreme Court of Missouri. Division No. 2.

July 9, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 10, 1956.

Chapman, Schwartz & Chapman, Adolph K. Schwartz, St. Louis, for appellant.

Flynn & Parker, Joseph L. Badaracco, St. Louis, for respondents.

BARRETT, Commissioner.

In this action by Frank H. and Margaret M. Niehaus on an insurance policy a jury returned a verdict in favor of the company, Central Manufacturers' Mutual Insurance Company. The trial court granted the plaintiffs a new trial on the specified ground that the court had erred to the plaintiffs' prejudice in giving the jury defendant's requested instruction number five. The company has appealed from the order granting the new trial and urges that instruction five was not prejudicially erroneous and, in any event, that the court erred in not sustaining its motions for a directed verdict because the plaintiffs had violated the provisions of the policy in that they had not filed timely proofs of loss and were guilty of fraud and false swearing as a matter of law. On the other hand, the plaintiffs claim, of course, that instruction five was prejudicially erroneous and, in addition, that there was no fraud or false swearing and that the defendant's agent waived timely filing of the proofs of loss.

At the outset it is regretfully noted that both parties, in presenting and urging their conflicting claims, have cited cases without discrimination as to the particular type of insurance policy involved, how it was effectuated, its provisions and, in addition, the precise issues involved in the trial of the case as well as here. Negligence cases, except as they illustrate general principles, are not too helpful and references to various key numbers in the Missouri Digest are less than helpful. The insurance policy sued on and involved here is a "personal property floater" policy. Originally, for

a premium of $648.10, the policy insured the personal property of Frank H. and Margaret M. Niehaus in the sum of $18,-850 for a period of three years from the 30th day of July 1949. The policy provided for $8,825 insurance on unscheduled personal property which included not to exceed $250 on jewelry, $100 on money and $500 on securities, evidences of debt and philatelic property. Then there was $10,-025 insurance on scheduled property, in this policy diamonds and other particularly described jewelry in the sum of $9,025 and a stamp collection in the sum of $1,000. The perils insured against are "All risks of loss of or damage to property covered except as hereinafter provided," which included theft losses and losses by burglary. The persons and property covered are "Personal property owned, used or worn by the persons in whose name this policy is issued * * * and members of the Insured's family of the same household, while in all situations * * *." The original policy was issued by the Ebeling Insurance Agency, Inc., Clayton, Mo. and the policy and all of its endorsements were signed by Jos. M. Ebeling, Jr. In 1951 Mr. Niehaus pleaded guilty to income tax evasion, involving fraud, and was sentenced to six years' imprisonment and a fine of $20,000 and in August 1951 the named insured was changed by endorsement to Mrs. Niehaus only.

On October 7, 1951 and again on April 23, 1952, while Mr. Niehaus was in a United States penitentiary at Terre Haute, Indiana, the Niehaus residence at Ladue and Mosley Roads, Creve Coeur, St. Louis County, was burglarized and on both occasions a quantity of personal property was stolen. The suit on this policy is to recover for the loss of the property stolen in both burglaries. In the original petition it was claimed that certain itemized property of the value of $1,429.30 was taken in the first robbery, October 7, 1951, and that on April 23, 1952, itemized property of the value of $6,820.65 was taken.

■ The policy contains a valid provision requiring a detailed sworn proof of loss "sixty days from the date of loss." Leigh v. Springfield Fire & Marine Ins. Co., 37 Mo.App. 542. The first burglary loss occurred on October 7, 1951 but the appellant, in its argument, admits that "This filing time was extended by the defendant to April 20, 1952, by a letter dated January 21, 1952, granting 90 days from that date, and enclosing a blank proof of loss." The blank proof of loss then enclosed was not used by the insured. The second burglary was April 23, 1952, and on August 7, 1952, a proof of loss with attached detailed schedules, schedules "a" and "b," purporting to cover both losses was filed with the company. This proof of loss, obviously, was not timely filed but the plaintiffs claimed and their proof supported the claim that the company's local agent waived the timely filing of the proof or proofs. The local agent supplied the blank proof used and the appellant tacitly concedes that the plaintiffs' evidence supports the claim that the agent did waive the timely filing of the proof of loss, provided he had authority to do so. And, in this regard, the evidence relied upon as establishing the waiver is fairly comparable to the evidence in Nickell v. Phoenix Ins. Co., 144 Mo. 420, 46 S.W. 435; Harness v. National Fire Ins. Co., 76 Mo.App. 410 and McCollum v. Hartford Fire Ins. Co., 67 Mo.App. 76.

The appellant's claim that this proof of loss was not timely filed has a twofold aspect. As stated, while Mr. Niehaus was in the penitentiary, in 1951 and 1952, the named insured in the policy was changed from "Frank H. Niehaus and Margaret Niehaus" to "Margaret Niehaus." The proof of loss was signed "Frank H. Niehaus by Margaret M. Niehaus Atty-in-Fact." It is said, since Frank H. Niehaus was no longer a named insured under the policy, that the proof was filed by Frank H. Niehaus and, therefore, the named insured never filed a proof of loss. It is said, in the second place, that the

Ebeling Agency ceased to be an agent for the defendant company in March 1951, prior to the second burglary, and therefore had no authority to further represent the company and particularly had no authority to waive the timely filing of proofs of loss.

■ As to the first of these matters; regardless of whether the named insured was Mr. or Mrs. Niehaus, the coverage of the policy is of personal property owned by the persons in whose name the policy is issued "and members of the Insured's family of the same household, while in all situations, except as hereinafter provided." There was no claim that Mr. Niehaus was not a member of the insured's family, within the meaning of the policy, even while in the penitentiary, and the policy did not "hereinafter" provide otherwise, and the property stolen was personal property which belonged to either Mr. Niehaus or Mrs. Niehaus. 4 Appleman, Insurance Law, Sec. 2294, p. 152; Wilson v. Hawkeye Cas. Co., 67 Wyo. 141, 215 P.2d 867. This fact is not conclusive, however, and is only noted in passing.

■ As to the second of these matters the appellant urges that the Ebeling Agency "was merely an issuing agent and not a general agent" and, in any event, that the agency had been canceled in March 1951. In so contending the appellant relies upon Mayberry v. Home Insurance Co., Mo.App., 208 S.W. 99. In that case the agency had been canceled but more important, in contrast with the agency and policy involved here, the policy in that case was issued upon "application," evidently by an agent who had no authority to issue and countersign policies. Neither Mr. Ebeling nor anyone in the Ebeling Agency who had ever transacted any business with either Mr. or Mrs. Niehaus testified for either the plaintiffs or the defendant. The appellant did call as a witness an Ebeling employee who testified that he went to work for the Ebeling Agency in March 1951, that at that time the agency represent-

ed five casualty companies and, "roughly," fourteen fire companies and, he said, "To the best of my knowledge, it (the agency for the defendant company) was terminated before March, 1951." This witness admitted, however, that this policy was issued for a period of three years from July 30, 1949, and the policy as well as its numerous endorsements were signed by "Jos. M. Ebeling, Jr." The adjuster, in testifying for the appellant, read from his files the fact that "the agent is Ebeling Insurance," the claims were reported to him by the Ebeling Agency and he said that "As of today" (the date of the trial, February 1955) Ebeling was not an agent but, "When his relationship with the company expired, I have no way of knowing." He said that Ebeling was an agent for the company when the two losses occurred and as to August 7, 1952, said, "I assume so, I don't know." These witnesses testified without preliminary examination as to the source and extent of their knowledge and without objection, nevertheless, without detailing and analyzing all the evidence, the fact was that the Ebeling Agency was an agent with authority to issue and countersign policies and was such an agent as could waive the requirement of a timely filing of proofs of loss, and the appellant's evidence was not conclusive as to the discontinuance of the agency prior to the waiver. Nickell v. Phoenix Ins. Co., supra; Dorrance v. Pennsylvania Fire Ins. Co., D.C., 98 F. Supp. 485; 17 Appleman, Insurance Law & Practice, Secs. 9744, 9746-9750, pp. 558, 568-588.

There is one other matter in this connection and that is the fact that the proof of loss was delivered to the company's representative August 7, 1952, and there was no objection either to its form or content and it was never returned to the plaintiffs for any purpose. Johnson v. Lumber Ins. Co. of N. Y., 137 Mo.App. 380, 118 S.W. 112; 5 Appleman, Insurance Law & Practice, Sec. 3555, p. 746. After receipt of the proof of loss, on August 26, 1952, Mrs. Niehaus received this letter from the company's law-

yers: "Please be advised that based on the purported schedule of loss and the information contained in our file the company hereby denies all liability under the above insurance policy." The policy was in force on both dates, October 7, 1951 and April 23, 1952, and there was no objection to the schedules for both losses being included in the one proof of loss—and there is no claim, unless the plaintiffs have breached its provisions in other respects, that the policy did not cover the successive losses. Block v. United States Fidelity & Guaranty Co., 316 Mo. 278, 290 S.W. 429; Loewenstein v. Queen Ins. Co., 227 Mo. 100, 127 S.W. 72. In the latter leading case there were three separate policies in three separate companies, one adjuster representing all companies, and it was held, in addition to an agent's waiver and in the absence of specific objection, that one proof of loss sufficed for all policies and all companies. All the facts and circumstances concerning Ebeling's Agency and the proofs of loss have not been detailed; it is sufficient to say, in short, however, that upon this record the appellant was not entitled to a directed verdict for the reason that proofs of loss were not timely filed.

■ As we have repeatedly said, there was a burglary on October 7, 1951 and a burglary on April 23, 1952. When the schedules, "a" and "b," were filed with the proof of loss schedule "a" listed property of the value of $6,820.65 as having been stolen in the burglary of April 23, 1952, and schedule "b" listed property of the value of $1,429.30 as having been stolen in the burglary of October 7, 1951. On the day the case was called for trial plaintiffs' counsel, by leave of court and without objection or claim of surprise by defendant's counsel, amended the petition by interlineation "to show that the items allegedly removed from plaintiffs' residence, according to paragraph two of Count II, on or about April 23, 1952, that the total value of $6,820.65 was, in reality, the list of items taken from the Niehaus home on October 7, 1951, and that the items listed in para-

graph three of Count I of plaintiffs' petition as being taken from the Niehaus home on or about October 7, 1951, are the items actually taken from the Niehaus residence on April 23, 1952." In short, the plaintiffs amended the petition so as to claim the greater loss of $6,820.65 by reason of the earlier burglary on October 7, 1951 and the smaller loss of $1,429.30 by reason of the burglary on April 23, 1952. This fact was relied upon by the appellant as a defense to this action and was hypothesized in instruction five:

"The Court instructs the jury that the policy of insurance herein sued upon provides that said policy of insurance shall be void if the plaintiffs have concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof, and said policy of insurance shall be void in case of any fraud or false swearing by the plaintiffs touching any matter relating to this insurance or the subject thereof, whether before or after the loss.

"In this connection you are instructed that if you find and believe from the evidence that the plaintiffs filed a claim against the defendant in substance and to the effect that the plaintiffs on or about April 23, 1952, had lost certain items of personal property by reason of a burglary at plaintiffs' residence, and if you find and believe that in said claim made by the plaintiffs against the defendant that one or more of the items claimed to have been stolen from plaintiffs on or about April 23, 1952, had in fact been stolen from plaintiffs' residence on or about October 7, 1951, and that such item or items were not in fact knowingly stolen from plaintiffs' residence on or about April 23, 1952, or if you find and believe from the evidence that the items claimed by plaintiffs to have been stolen on October 7, 1951, were knowingly stolen on some other date, and if you find and believe from the evidence that such

conduct on the part of the plaintiffs constituted fraud or false swearing by the plaintiffs, then you are instructed that under the policy of insurance herein sued upon the plaintiffs cannot recover and your verdict will be for the defendant on Count I and Count II."

The trial court deemed the giving of this instruction prejudicial error and for that reason granted a new trial. It is not necessary at this point to detail and analyze the evidence in this connection; in considering whether the instruction was erroneous it is assumed, solely for the purposes of this opinion, that there is some evidentiary basis for the instruction. See and compare State ex rel. Burton v. Allen, 312 Mo. 111, 278 S.W. 772, which on certiorari specifically modified Burton v. Newark Fire Ins. Co., Mo.App., 263 S.W. 539, relied on by respondents. Also it is assumed that the instruction is not prejudicially erroneous for mere lack of definition of a term or terms, "fraud" or "false swearing." Zackwik v. Hanover Fire Ins. Co., Mo.App., 225 S.W. 135. Nevertheless, in the precise facts and circumstances of this case, the instruction is erroneous as a matter of law. In Patten v. Springfield Fire & Marine Ins. Co., Mo. App., 11 S.W.2d 1101, the trial court gave a "declaration of law" to the effect that if there was any change in interest in the title to a farm dwelling there could be no recovery on the policy. Even in a court tried case the judgment was reversed, the court saying, 11 S.W.2d loc. cit. 1105, "But even though Poplin in fact did convey to Deer his then interest in the insured property, such fact would not and ought not to defeat recovery on the ground of the alleged false statement in the proofs of loss, *unless Poplin made such statement willfully and in bad faith and with the intent to deceive the defendant to its injury.*" Other instances of instructions, both given and refused, fairly comparable to the instruction involved here which have been held to be prejudicially erroneous are to be found in State ex rel. Burton v. Allen, supra; Wittels Loan & Mercantile

Co. v. American Central Ins. Co., Mo.App., 273 S.W. 1084; Knight v. Glenn Falls Ins. Co., Mo.App., 20 S.W.2d 941, 943; and Marion v. Great Republic Ins. Co. of St. Louis, 35 Mo. 148.

That the instruction was prejudicially erroneous in the circumstances of this record more clearly appears in briefly considering certain phases of the appellant's contention that the plaintiffs were "guilty of fraud and false swearing as a matter of law." Mrs. Niehaus testified that she did not prepare the schedules. The inference she would have drawn is that her counsel prepared them and inadvertently switched the dates or attributed the losses to incorrect dates. The appellant's claim that the switching of the dates and amounts constituted fraud is based in part upon the deposition of Gordon Lee Cooper, a burglar. Cooper, while in jail at Poplar Bluff, testified that he and Powers burglarized the Niehaus residence one time. He did not know whether it was in the "fall, summer or spring or winter." He did not know the month or the year but finally said, "That is right" to this question, "The only time that you ever burglarized the Niehaus home was about October 1951, is that correct?" He testified that he and Powers took $500 in currency, about $200 in silver coins, two revolvers, a portable radio and, after stating that they took nothing else, admitted taking an electric sewing machine. When shown schedule "b" the witness said, "All this stuff is all horse blank, I bet you on that." Cooper says that he did not take all the articles listed on the schedule. The appellant says that the plaintiffs switched schedules after reading the deposition and that the deposition establishes that they were fraudulently claiming the loss of articles which in point of fact were not stolen. Mr. and Mrs. Niehaus testified that all the articles listed on both schedules were stolen in the two burglaries and that the items listed on schedule "a" were stolen in the burglary of October 7, 1951 and that list includes, among other items, $500 in currency, the sewing machine, two

revolvers and a portable radio. There was a third burglary in October 1952 and a claim against another company and it is urged that items included in these two losses were also claimed against the other company. It is urged that Mr. Niehaus falsely testified to the amounts involved in his income tax violations, $52,000 when his wife said $500,000. It is said that they falsely testified as to having made other claims than those involved here. On cross-examination Mr. Niehaus was asked whether he had made a claim for the third burglary. He said that "he was gone" at that time and had had nothing to do with that claim. Mrs. Niehaus testified that she had not made a claim for any other losses on insurance policies. The adjuster, without objection, read from a memorandum of his own the following comments and information: "April 23, 1952, burglary. October 3, 1953, fire at the dwelling, no liability. That means liability was denied for the damage, whatever that amounted to. November 10, 1948, personal property floater, $30 claimed. January 2, 1951, fire loss in the floater policy. Claim withdrawn. May 11, 1951, theft, under the floater policy, $350. October 7, 1951, burglary. February 25, 1950, fire at the dwelling. This claim was closed April 10, 1952, because the assured couldn't be contacted. October 3, 1952, windstorm damage to trees, no liability. That means again the loss is not covered by the policy. October 6, 1952, burglary, $1,018.41. April 15, 1953, windstorm damage to the building on North Union—the funeral home, $60. October 3, 1953, fire damage to trees at the home on Ladue and Mosley, $400. That was the limit of the liability, total claim was $825. In other words, they were insured for $400. October 3, 1953, loss under the floater policy, fire damage to tools, and so forth, $371.79. February 26, 1954, a bur-glary, $231.50. March 4, 1954, a fire loss under the floater policy, $4.50. Total fourteen claims." The plaintiffs explained some of these items, some of the claims were handled by an employee of the funeral home and some of the items and the adjuster's comments speak for themselves.

It should be emphasized that all the evidence has not been set forth in detail and the conflicting claims analyzed, and it should be carefully noted that no opinion is expressed as to the relevancy, cogency or probative force of any of the evidence or upon what, if any, particular issue it may or may not bear. The evidence noted is merely for the purpose of illustrating that this is not an instance of the plaintiffs' admitting or of the evidence conclusively establishing fraud and false swearing as to some material matter so as to demand the direction of a verdict upon that ground as was the fact in Arel v. First National Fire Ins. Co., 195 Mo.App., 165, 190 S.W. 78. See annotation 169 A.L.R. 798. Whatever the precise issue and provision of the policy involved, fraud and false swearing was an inference to be drawn by the jury. State ex rel. Arel v. Farrington, 272 Mo. 157, 197 S.W. 912; Zackwik v. Hanover Fire Ins. Co., supra; 46 C.J.S., Insurance, § 1372, p. 612; 29 Am.Jur., Sec. 1541, p. 1163; annotations 20 A.L.R. 1164, 1172; 56 A.L.R. 390, 391.

Accordingly the judgment is affirmed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.